UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LONNIE ANDERSON,<br>    Petitioner, | :<br>:<br>: |
| v. | : Case No. 3:21-cv-825 (KAD) |
| STATE OF CONNECTICUT, et al.,<br>    Respondents. | :<br>:<br>: |

**MEMORANDUM OF DECISION**

The petitioner, Lonnie Anderson ("Anderson"), filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 2011 conviction of assault in the first degree and assault on a peace officer. In response to an order to show cause why the relief sought should not be granted, the respondents assert that the state court decisions were not contrary to, or an unreasonable application of, Supreme Court law. For the following reasons, the petition is DENIED.

**Procedural History**

Anderson was convicted after a jury trial of assault in the first degree and assault on a peace officer. He was sentenced to a term of imprisonment of eleven years, followed by five years of special parole. *Anderson v. Commissioner of Corr.*, 201 Conn. App. 1, 6-7, 242 A.3d 107, 111-12, *cert. denied*, 335 Conn. 983, 242 A.3d 105 (2020) ("*Anderson I*"). In 2012, Anderson withdrew his direct appeal. *Anderson v. Warden*, No. CV15-4007068S, 2018 WL 6314677, at *1 (Conn. Super. Ct. Nov. 8, 2018).

In 2015, Anderson filed a petition for writ of habeas corpus in state court asserting claims of ineffective assistance of counsel at both his trial and on appeal. *Id.* Anderson argued that counsel

failed to present evidence at trial that would have supported a theory of self-defense and gave him unsound advice to withdraw his appeal. *Id.* at *1, 4. The habeas court denied the claim regarding the adequacy of counsel's representation at trial and denied certification to appeal that decision but granted the petition regarding the appeal and restored Anderson's right to appeal. *Id.* at *6. Anderson then appealed the denial of certification to appeal the denial of his habeas ineffective assistance of trial counsel claim and he filed a direct appeal in the criminal case, his right to do so having been restored.

As to the habeas appeal, the appellate court determined that the habeas court's factual findings were fully supported by the record. Based on those facts, the court agreed with the habeas court's determination that unheard testimony from the identified witnesses would not have supported a theory of self-defense to warrant a self-defense instruction. The appellate court accordingly determined that the denial of certification to appeal was not an abuse of discretion and dismissed the appeal. *Anderson I,* 201 Conn. App. at 15-18, 20, 242 A.3d at 115-17, 119.

In the direct appeal, Anderson asserted a related claim, that the trial court erred in failing to instruct the jury on self-defense. *State v. Anderson*, 201 Conn. App. 21, 23, 241 A.3d 517, 518-19, *cert. denied*, 335 Conn. 984, 242 A.3d 105 (2020) ("*Anderson II*"). The appellate court concluded that, based on the evidence presented at trial, there was no reasonable basis to believe that Anderson would benefit from a self-defense instruction and affirmed the judgment. *Id.* at 29-39, 241 A.3d at 522-27.

Anderson commenced this action by petition filed on June 17, 2021. Although he does not clearly articulate his grounds for relief, the respondents have interpreted the petition to assert the two claims Anderson presented to the state appellate courts, that counsel was ineffective in failing to call witnesses who would have supported a justification/self-defense instruction, and relatedly,

2

that the trial court erred in failing to give a self-defense instruction.

**Factual Background**

The Connecticut Appellate Court determined that the jury could reasonably have found the following facts.

> On the evening of October 6, 2009, State Marshals Arthur Quinn, Charles Valentino, Joseph Butler, and Richard Krueger went to 434 Indian Avenue in Bridgeport to serve a capias warrant authorizing the marshals to take [Anderson] into custody for failing to appear at a court proceeding. At approximately 7:45 p.m., the marshals arrived at the residence. Quinn and Valentino went to the front door, and Butler and Krueger went to the rear of the residence. Quinn and Valentino walked up to the residence and knocked on the door. Quinn and Valentino wore clothing that identified them as state marshals and displayed badges. Neither marshal carried a firearm. Valentino was in possession of the capias warrant and wore a utility belt on which were attached handcuffs, gloves, Mace, and a police baton.
>
> An eight year old relative of [Anderson] answered the door, and the marshals asked to speak with [Anderson]. The child left and returned with Lyman Anderson, [Anderson's] brother. Utilizing a photograph of [Anderson], Quinn and Valentino recognized that Lyman Anderson was not the subject of the capias. Lyman Anderson then went back into the home, and [Anderson] came to the front door.
>
> [Anderson] arrived at the front door armed with a nine millimeter semiautomatic pistol that he kept concealed in his sweatpants. Upon inquiry about his identity, [Anderson] falsely replied that he was John Anderson. The marshals responded that he was Lonnie Anderson, informed him that he had missed a court date, and stated to him that they had a capias warrant for him. The marshals told [Anderson] that they intended to take him into custody. [Anderson] took a step back, drew his pistol, and chambered a round. Valentino spotted the firearm and shouted "[g]un!" The marshals ran off the doorstep and headed in opposite directions.
>
> As they were running away from [Anderson's] residence, Quinn and Valentino heard several gunshots and Valentino perceived a bullet passing near his head. Valentino heard additional gunshots as he sought cover behind a parked van. Valentino observed, through the vehicle's windows, [Anderson] standing on the top step of the stoop and shooting toward Quinn. Valentino also saw [Anderson] discard an ammunition magazine and reload a second magazine into the pistol.
>
> As Quinn was running, he heard multiple gunshots and felt a bullet hit his left foot. Quinn also sustained a second gunshot wound to his right forearm. A neighbor emerged from his home with a towel to help stop the bleeding from Quinn's arm.

> A few minutes later, Bridgeport Police Officer Hugo Stern received a call, via a police broadcast, about the incident. Stern arrived at the Indian Avenue residence and saw uniformed state marshals taking cover near a red vehicle. Stern also observed someone matching the description of the shooter. Stern aimed his gun at that person, who was [Anderson], and ordered him to raise his hands. [Anderson] complied.
>
> As Stern cautiously approached [Anderson], he noticed that [Anderson] wore an empty holster on his right hip. Stern ordered [Anderson] to lie on the ground slowly, and [Anderson] complied. Stern directed [Anderson] to spread his arms and legs on the ground, and [Anderson] appeared cooperative. After Stern holstered his own weapon and attempted to handcuff [Anderson], [Anderson] resisted by rising into a crouch and acting combative. Stern saw [Anderson] reach into the waistband of his pants and try to retrieve an item. Bridgeport Police Officer Bobby Jones arrived at the scene subsequent to Stern's arrival and came to Stern's assistance. Both officers subdued [Anderson]. As the officers rolled [Anderson] over, they observed that [Anderson] had been lying on top of a semiautomatic handgun. The officers seized the weapon, and later testing demonstrated that the weapon was the same gun from which several shots had been fired. Additionally, the weapon had been reloaded with a magazine full of cartridges.

*Anderson II,* 201 Conn. App. at 23-25, 241 A.3d at 519-20.

**Standard of Review**

Before filing a petition for writ of habeas corpus in federal court, the petitioner must properly exhaust his state court remedies. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b)(1). He must present the essential factual and legal bases for his federal claims to each appropriate state court, including the highest state court capable of reviewing it, to afford the state courts a full and fair "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (internal quotation marks and citation omitted). The petitioner must have presented his claim to the state courts in a manner sufficient to alert the state court that he is asserting a federal claim. *Baldwin v. Reese,* 541 U.S. 27, 29 (2004). "The exhaustion requirement is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without' first according the state courts an 'opportunity

4

to … correct a constitutional violation.'" *Davila v. Davis*, ___ U.S. ___, 137 S. Ct. 2058, 2064 (2017) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

Further, the federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws. 28 U.S.C. § 2254(a). The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The federal law defined by the Supreme Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir.), *cert. denied*, 537 U.S. 909 (2002). Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision. *White v. Woodall*, 572 U.S. 415, 419 (2014). Second Circuit law which does not have a counterpart in Supreme Court jurisprudence cannot provide a basis for federal habeas relief. *See Renico v. Lett,* 559 U.S. 766, 778 (2010) (holding that court of appeals erred in relying on its own decision in federal habeas action); *see also Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005) (absent a Supreme Court case establishing a particular right, federal court inference of such a right is not a basis upon which to grant federal habeas relief).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the

Supreme Court on essentially the same facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case. The state court decision must be more than incorrect; it must be "'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Virginia v. LeBlanc*, ___ U.S. ___, ___, 137 S. Ct. 1726, 1728 (2017) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)); *see also Burt v. Titlow*, 571 U.S. 12, 20 (2013) (federal habeas relief warranted only where the state criminal justice system has experienced an "extreme malfunction"); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (objective unreasonableness is "a substantially higher threshold" than incorrectness). Even clear error will not establish an unreasonable application of Supreme Court law. *LeBlanc,* 137 S. Ct. at 1728 (quoting *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam)).

When reviewing a habeas petition, the Court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (standard for evaluating state court rulings where constitutional claims have been considered on the merits and which affords state court rulings the benefit of the doubt is highly deferential and difficult for petitioner to meet). The presumption of correctness, which applies to "historical facts, that is, recitals of external events and the credibility of the witnesses narrating them[,]" will be overturned only if the material facts were not adequately developed by the state court or if the factual determination is not adequately supported by the record. *Smith v. Mann*, 173 F.3d 73, 76 (2d Cir. 1999) (internal quotation marks and citation omitted). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by

overturning their decisions only when there could be no reasonable dispute that they were wrong." *Donald*, 575 U.S. at 316.

In addition, the federal court's review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. at 180.

**Discussion**

The respondents assert two arguments. First, they contend that the Connecticut courts reasonably applied Supreme Court law to the relevant facts. Second, they argue that Anderson failed to present any argument based upon federal law to the state court with respect to his jury instruction claim.

### Ineffective Assistance of Counsel

In his state habeas action, Anderson argued that trial counsel was ineffective for failing to present evidence which would have supported a jury instruction on self-defense. The Appellate Court first considered whether certification to appeal was improperly denied. *Anderson I,* 201 Conn. App. at 11. In doing so, the court necessarily considered the merits of Anderson's claim that trial counsel afforded him ineffective assistance. *See Anderson I*, 201 Conn. App. at 13, 242 A.3d at 114-15.

To demonstrate that counsel provided constitutionally ineffective assistance, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness and that he suffered prejudice from that conduct, *i.e.*, but for counsel's alleged errors, the result of the proceeding would have been different. *Premo v. Moore*, 562 U.S. 115, 121-22 (2011) (noting that petitioner "must show both deficient performance by counsel and prejudice") (citation and internal quotation marks omitted); *Strickland v Washington*, 466 U.S. 668, 694 (1984). "*Strickland* does not guarantee perfect representation, only a reasonably

competent attorney." *Richter*, 562 U.S. at 110 (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks and further citation omitted). To establish deficient performance by counsel, a petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance…." *Strickland*, 466 U.S. at 669.

Demonstrating that counsel provided constitutionally ineffective assistance is "never an easy task … [and] establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Premo*, 562 U.S. at 122 (citation and internal quotation marks omitted); *Titlow*, 571 U.S. at 19 (noting that "AEDPA erects a formidable barrier" to federal habeas review of claims that have been adjudicated in state court). When the federal court considers an ineffective assistance of counsel claim under the AEDPA, the court applies a "doubly" deferential standard regarding the state court decision. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). "[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 562 U.S. at 105. *See also Shinn v. Kayer*, ___ U.S. ___, 141 S. Ct. 517, 523 (2020) (per curiam) ("[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.") (quoting *Knowles*, 556 U.S. at 123) (internal quotation marks omitted).

In analyzing Anderson's ineffective assistance of counsel claim, the Connecticut Appellate Court applied the rule set forth in *Strickland*. Thus, the decision was not the result of the state court applying a "rule different from that set forth by the Supreme court." *Bell v. Cone, supra.,* 535 U.S.

8

at 694.[1] The court must determine, therefore, whether the appellate court's decision was a reasonable application of *Strickland* to the facts of this case under the standards set forth above.

In his habeas petition, Anderson argued that trial counsel failed to present evidence from two responding officers, Jones and Hernandez, who could have testified that they observed a marshal carrying a gun when they responded to the scene, which testimony would have contradicted the testimony of the marshals at the door that they were unarmed. Anderson also criticized his counsel for not establishing through his brother's testimony that one of the marshals on the doorstep had a gun on his person and that the officers attempted to enter the home to grab Anderson. The court concluded that, even if presented, this evidence would not have warranted a self-defense instruction or affected the outcome of the trial.

In reviewing the habeas court's determination, the appellate court first explained, under Connecticut law, a person may use deadly force in self-defense only if he "reasonably believed his adversary's unlawful violence to be imminent or immediate." *Anderson I.* 201 Conn. App. at 14, 242 A.3d at 114. The appellate court agreed with the habeas court that, among other reasons, "the fact that Quinn and Valentino indisputably were fleeing, as fast as they could, from [Anderson] when he fired on them precluded any claim of self-defense." *Id.* at 19.[2] The unheard testimony from Jones, Hernandez and Anderson's brother therefore would not have required the giving of a self-defense instruction. *See id.* at 20, 242 A.3d at 118 ("[I]n light to the undisputed evidence that Valentino and Quinn were fleeing when [Anderson] shot at them, there was insufficient evidence

---

[1] Nor has Anderson identified any Supreme Court decision with a different outcome based on essentially identical facts. *Bell v. Cone, supra,* 535 U.S. at 694.

[2] The habeas court had also relied upon its assessment that "there was no evidence that any marshal unholstered or brandished a firearm while trying to take [Anderson] into custody," and that "Quinn and Valentino were clearly identifiable as marshals when they confronted" Anderson. *Id.* at 16, 242 A.3d at 116. The appellate court made similar findings when dismissing the appeal. *Id.* at 16 – 18.

'to raise a reasonable doubt in the mind of a rational juror as to whether the defendant acted in self-defense.'"). Accordingly, the appellate court concluded that Anderson did not establish the prejudice prong of the *Strickland* standard for assessing ineffective assistance claims and affirmed the decision of the habeas court.

This court concludes that the Connecticut Appellate Court's decision that Anderson failed to demonstrate prejudice to support his ineffective assistance of trial counsel claim is a reasonable application of *Strickland*.[3] The petition for writ of habeas corpus is denied on this ground.

**Failure to Instruct the Jury on Self-Defense**

On direct appeal, Anderson argued that the trial court denied him due process by failing to instruct the jury on self-defense. The respondents contend that Anderson failed to alert the state court that he was asserting a federal claim. Other than the general reference to due process, Anderson relied on state cases and statutes to support his claim. And the Connecticut Appellate Court also did not specifically analyze the claim under federal law. The court need not determine whether the reference to due process was sufficient to alert the state court that he was asserting a federal claim because the Court agrees with the Connecticut Appellate Court that there was insufficient evidence to support a self-defense theory, and the trial court did not therefore violate Anderson's constitutional rights by failing to instruct the jury on self-defense.

When evaluating a habeas corpus claim based on the state court's refusal to give a requested justification charge, the court must consider three questions: "First, was [the defendant] entitled to a justification charge? Second, if so, did the failure to give one result in a denial of due

---

[3] Anderson has not demonstrated that this determination was incorrect at all, let alone "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *LeBlanc,* 137 S. Ct. at 1728.

process? Third, if so, did the state court's contrary conclusion constitute an unreasonable application of clear Supreme Court law?" *Hubrecht v. Artus*, 457 F. App'x 29, 31 (2d Cir. 2012) (quoting *Jackson v. Edwards*, 404 F.3d 612, 621 (2d Cir. 2005) (internal quotation marks omitted).

Whether a defendant is entitled to use self-defense is governed by Connecticut General Statutes § 53a-19(a), which provides in relevant part:

> [A] person is justified in using reasonable physical force upon another person to defend himself … from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

The test is both subjective and objective; subjectively, the jury is required to view the situation from the criminal defendant's perspective and, objectively, the jury must find the defendant's view reasonable. *See State v. Lewis*, 245 Conn. 779, 811, 717 A.2d 1140, 1157 (1998). Furthermore, the evidence must be sufficient so the jury will not be required to resort to speculation to justify the use of self-defense. *Id.*, 717 A.2d at 1158.

In determining whether the trial court erred in failing to instruct the jury on self-defense, the Connecticut Appellate Court, in *Anderson II*, had to evaluate the available evidence to see whether a reasonable jury could find that the defendant acted justifiably in self-defense.[4] There, Anderson argued that there was evidence that a marshal stepped over the threshold and attempted to grab Anderson, that the marshals were armed, and that they were not readily identifiable as marshals. *Anderson II*, 201 Conn. App. at 29, 241 A.3d at 522. The evidence was uncontroverted,

---

[4] Although in a different context, this was the same analysis the Connecticut Appellate Court used, in *Anderson I*, in reviewing the state habeas court's determination that trial counsel was not ineffective in failing to introduce additional evidence in support of the use of self-defense. As discussed *supra.,* there, even with the additional evidence which the Defendant claimed should have been adduced at trial, the appellate court determined that there was no basis upon which to instruct the jury on self-defense.

11

however, that no marshal brandished a weapon and that the marshals were fleeing when Anderson shot at them. *Id.* at 38-39, 241 A.3d at 527 (the marshals … immediately retreated from the defendant when he pulled out his firearm and were in flight at the time the defendant fired his gun at them"). Even if the court credits Anderson's view of the evidence, there was no evidence that either marshal drew any kind of weapon. Furthermore, there was uncontested evidence that the marshals fled when they saw the gun and that they were running away when Anderson fired the gun and struck one of them. Indeed, Valentino, upon taking cover behind a vehicle, was able to see Anderson shooting at Quinn from the front stoop and also watched him reload the gun.

The state statute provides that deadly force may be used only if Anderson reasonably believed that the marshals were "using or about to use deadly physical force" or were "inflicting or about to inflict great bodily harm." Conn. Gen. Stat. § 53a-19(a). As the marshals were fleeing when Anderson shot at them, he could not have reasonably believed that either condition was present when he discharged his weapon. Thus, the trial court was correct in its determination that a self-defense instruction was not warranted. As Anderson was not entitled to the instruction, the court's review ends at the first inquiry. *Edwards,* 404 F. 3d at 621. The petition for writ of habeas corpus is denied on this ground as well.

**Conclusion**

The petition is **DENIED**. The Clerk is directed to enter judgment and close this case.

The court concludes that an appeal of this ruling would not be taken in good faith. Thus, a certificate of appealability will not issue.

**SO ORDERED** this 25th day of October 2021 at Bridgeport, Connecticut.

/s/
Kari A. Dooley
United States District Judge